IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF TEXAS

GALVESTON DIVISION

CHERYL ODOM,
    PLAINTIFF,


V.                                  CIVIL ACTION NO. 3:13-cv-74
COLLEGE OF THE MAINLAND,
    DEFENDANT.

<u>PLAINTIFF'S, CHERYL ODOM, ORIGINAL COMPLAINT</u>

    Plaintiff files this complaint with respect to employment actions directed against her by her employer, College of the Mainland. It is Plaintiff's position that Defendant's actions violate Plaintiff's rights under federal law (retaliation for asserting her rights under federal law and a complaint under the Family Medical Leave Act). Defendant, College of the Mainland, is a local community college, and was Plaintiff's employer. Plaintiff would show unto the Court as follows, to-wit:

<u>Jurisdiction and Venue</u>

    1.    Jurisdiction vests under 28 U.S.C. section 1331 (federal question), 28 U.S.C. section 1343 (civil rights), and retaliation for exercising her rights under the Family Medical Leave Act.

    2.    At all times material to this action, Plaintiff

has resided in Galveston County, Texas. All matters related to this action have occurred in Galveston County, including the entering of contracts of employment.

3. Plaintiff has exhausted her administrative remedies with the United States Equal Employment Opportunity Commission (EEOC). The right to sue letter has been issued in this matter; this lawsuit is timely filed.

## Parties

4. Plaintiff is a former employee of the College of Mainland whose last day of employment was April 30, 2012.

5. Defendant is an employer as that term is defined in employment law and is defined as a governmental entity under Texas law.

## Facts Statement/Disparate Treatment

6. Plaintiff began her employment with the College of the Mainland on August 3, 2003.

7. Plaintiff was employed by the College as a Program Coordinator II, in the College's Teacher's Certification Program.

8. Between the period of September 16, 2011 and January 3, 2012, Plaintiff exercised her rights under the Family Medical Leave Act.

9. Plaintiff's leave from work related to her having brain surgery and the recovery process from her surgery.

2

10. Plaintiff was terminated from her employment on or about April 30, 2012.

11. The purported reason for the termination was a reduction-in-force.

12. Plaintiff contends her termination was because of the exercise of her use of Family Medical Leave the same being used against her.

13. Section 105 of the FMLA and section 825.220 of the FMLA regulations prohibit the following actions:

> An employer is prohibited from interfering with, restraining, or denying the exercise of, or the attempt to exercise, any FMLA right.
>
> **An employer is prohibited from discriminating** or retaliating against an employee or prospective employee for having exercised or attempted to exercise any FMLA right.
>
> **An employer is prohibited from discharging or in any other way discriminating against any person**, whether or not an employee, for opposing or complaining about any unlawful practice under the FMLA.
>
> **All persons, whether or not employers, are prohibited from discharging or in any other way discriminating against any person**, whether or not an employee, because that person has —
>
>> Filed any charge, has instituted, or caused to be instituted, **any proceeding under or related to the FMLA;**

>Given, or is about to give, any information in connection with an inquiry or proceeding relating to any right under the FMLA; or
>
>testified, or is about to testify, in any inquiry or proceeding relating to a right under the FMLA.

### Employment History and the Exercise of Leave

14. Prior to Plaintiff going out on leave, Plaintiff was approached by Carla Boone, Director of Continuing Education, with regards to Plaintiff assuming Boone's Director's duties in the Teacher Education Department - this occurred in July 2011.

15. Boone explained that she, Boone, wanted to transfer her Director's duties so that she could concentrate on her duties in the Continuing Education Department.

16. Boone also expressed a view she felt Plaintiff did not have any enough work.  Plaintiff disputed this and explained that she didn't have time to do all of her responsibilities.

17. Plaintiff felt that her supervisor was making it impossible for her to perform her duties with the proposed transfer.

18. It should be noted that TEA (Texas Education Agency) had recently commended Plaintiff's program for its excellence.

19. When Plaintiff was out on leave, she learned that Boone transferred all other job titles out of the Teacher Education's budget.

4

20. Plaintiff learned, after the fact, that the program's guidelines had been drastically altered in her absence in such a way as to severely limit enrollment and make it harder for the Program's survival.

21. Upon Plaintiff's return she learned that her administrative assistant had been removed.

22. Every employee in the Department, with Plaintiff's job title, was assigned an administrative assistant; such assistant is vital for the performance of one's job duties and responsibilities.

23. Plaintiff was informed that an assistant would be made available to her, but the position would not be under her budget. This help never came to fruition.

24. Plaintiff learned the Education Department was going to be abolished on February 20, 2012.

25. On February 6, 2012, Plaintiff was given a negative Evaluation that listed 31 points of problems with Plaintiff's performance.

26. Prior to Plaintiff taking leave, there were no such adverse performance concerns; the adverse performance issues were coupled with the redaction of documents from Plaintiff's employment file, including removing references to Plaintiff possessing a Master's degree in Education.

27. The negative evaluation related to previous duties that had been the responsibility of Boone.

28. In her conference with Boone surrounding the evaluation, Plaintiff was told that the evaluation was informal and "just a piece of paper between the two of us."

29. Plaintiff was also told that the evaluation would go "nowhere."

30. Plaintiff learned that Boone had in fact sent the evaluation to the Administration with a cover letter expressing doubts about Plaintiff's competency to do both jobs.

31. It should be noted that upon Plaintiff's return to work she was assured by Boone that she would have time to learn her new job responsibilities and would not be expected to have the expertise that Boone took nine (9) years to master.

32. On February 8, 2012, a recommendation was made by Carla Boone surrounding the Teacher Education Program.

33. The recommendation was directed to Amy Locklear, with a copy to Carla Anderson. The recommendation documents that Carla Boone's salary had been moved to the CE budget effective January 1, 2012, and that both administrative assistant positions had been moved, effective February 1, 2012.

34. The recommendation proposed the position of Program Coordinator II (Plaintiff's position) would not be needed.

35. There was also a recommendation that the College hire a retired teacher to support the certification of remaining students.

36. The recommendation was not to officially close the program, but to place the program on hold and when a decision "is made to recruit for a future cohort, consideration will need to be given to hiring a Master's level individual to coordinate the program".

37. With respect to the recommendation that the institution hire a Master's level individual to coordinate the program, the Defendant ignored and disregarded Plaintiff was possessive of the subject qualifications and used those qualifications to perform those same duties for her program.

38. On February 6, 2012, Carla Boone directed an email to Mary Rogers.

39. The email not only discusses Plaintiff's health conditions with this person but also sets out statements that are deemed defamatory by Plaintiff, seen by Plaintiff as seeking to lower her status in the eyes of third persons.

40. The email reads in part, "[f]or the most part, Cheryl seems to be doing fine.  Sometimes I'm not certain about whether or not her personality was affected; there have been some difficult days.  And some odd conversations.  (Please keep that between the two of us.)."

7

41. With respect to Plaintiff's FMLA, Boone wrote, "She told Jennifer she will be back at work mid-March (which is when her FMLA runs out), but I just don't know if she will be ready."

42. Boone also made direct comments regarding her belief surrounding Plaintiff's ability to "recall things accurately in conversation" but then conceded during that conference that Plaintiff accurately remembered the topic in question during their meeting.

43. After Plaintiff exercised her rights, she went from a competent employee to one being attacked immediately upon her return to work (evaluations, budget moves and emails discussing Plaintiff's medical condition and leave, conferences with staff and Deans painting Plaintiff in a negative light).

44. In the same context, Plaintiff was subjected to the budget moves where her position was the only one remaining under the Department budget at the time the proposal/recommendation was made to abolish the Department.

45. In context of pretext, even though the employer used financial circumstances at the College for the basis for its actions, the evidence reveals the employer i) hired others to fill the duties and responsibilities the Plaintiff had previously held; ii) did not abolish the program; iii) retained others less qualified than Plaintiff; iv) did not consider Plaintiff for positions in which she was qualified, even taking

8

a position at one time Plaintiff was not qualified for a position because she did not have a Master's degree; Plaintiff does possess such a degree).

46. In one of the meetings in which Plaintiff attended, Plaintiff was informed by Boone she didn't qualify for the open position (lack of Master's degree) because her name appeared on the "non-certified" SACS faculty list.

47. Plaintiff disputed Boone's comment and informed Boone that her assumption was wrong.  Boone's only response was to blame Plaintiff, "you better get it cleared up as the report is due tomorrow."

48. Plaintiff learned that Boone had told others she was not qualified for the open position and that she did not have A Master's degree.

Prayer for Relief

49. Plaintiff prays for the following relief:

    A.  Declaratory judgment stating that the
        Defendant has engaged in retaliatory
        conduct and that Defendant has violated
        Plaintiff's civil rights;

    B.  Back wages and benefits;

    C.  Future wages, if equity cannot be invoked,
        including benefits;

    D.  Compensatory damages incurred in the past,

    present and future;

  E. Reasonable and necessary attorney's fees

    incurred in the prosecution of this matter.

  F. Pre-judgment and post-judgment interest;

  G. Costs of court.

50. Plaintiff also prays for all relief in equity and under law to which she may be deemed entitled.

DATE:  March 18, 2013.

      Respectfully submitted,


      /S/ ANTHONY P. GRIFFIN
      _____

      ANTHONY P. GRIFFIN
      ATTORNEY-IN-CHARGE

      A GRIFFIN LAWYERS
      1115 TWENTY FIRST STREET
      GALVESTON, TEXAS  77550
      409.763.0386
      1.800.750.5034
      FACSIMILE NO. 409.763.4102

      STATE BAR NO. 08455300 [TEXAS]
      FEDERAL I.D. NO. 4736

      ATTORNEYS FOR PLAINTIFF
      CHERYL ODOM

<u>A JURY TRIAL IS DEMANDED</u>

c:word.odom_cheryl_plaintiff_original_complaint_final